Lynn M. Allen, State Bar Number 012612
lallen@tysonmendes.com
**TYSON & MENDES, LLP**
706 East Bell Road, Suite 129
Phoenix, Arizona 85022
Telephone: (602) 386-5656
Facsimile:  (602) 386-5657
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Allied World Specialty Insurance Company, a Delaware corporation,<br><br>                              Plaintiff,<br><br>          vs.<br><br>ICR Sanitary District, an Arizona sanitary district; Talking Rock Land, LLC, an Arizona limited liability company; David Barreira; Bob Summers; Bob Hilb,<br><br>                              Defendants. | No.<br><br>**COMPLAINT**<br><br>**(Declaratory Judgment Action)** |

For its complaint, plaintiff Allied World Specialty Insurance Company ("Allied World") alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      This is an action for declaratory judgment under 28 U.S.C. § 2201 *et seq*. arising from an Allied World WaterPlus Commercial Package Policy designated as policy number 5105-0495-05, effective February 7, 2018 through February 7, 2019 (the "Policy") issued to defendant ICR Sanitary District (the "District").

2.      Allied World is a Delaware corporation with its principal place of business in New York. For purposes of determining subject-matter jurisdiction, Allied World is a citizen of

**Tyson & Mendes, LLP**

1  New York.

2       3.    The District is an Arizona sanitary district with its principal place of business in

3  Arizona. For purposes of determining subject-matter jurisdiction, the District is a citizen of

4  Arizona.

5       4.    Talking Rock Land, LLC ("Talking Rock") is an Arizona limited liability

6  company with its principal place of business in Arizona. For purposes of determining subject-

7  matter jurisdiction, Talking Rock is a citizen of Arizona.

8       5.    Upon information and belief, David Barreira ("Barreira") is a resident of

9  Arizona. For purposes of determining subject-matter jurisdiction, Barreira is a citizen of

10  Arizona.

11       6.    Upon information and belief, Bob Summers ("Summers") is a resident of

12  Arizona. For purposes of determining subject-matter jurisdiction, Summers is a citizen of

13  Arizona.

14       7.    Upon information and belief, Bob Hilb ("Hilb") is a resident of Arizona. For

15  purposes of determining subject-matter jurisdiction, Hilb is a citizen of Arizona.

16       8.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there

17  is complete diversity between plaintiff and defendants, who are citizens of different states, and

18  the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

19       9.    This Court has jurisdiction to award declaratory judgment pursuant to 28 U.S.C.

20  §§ 2201-2202 and Arizona Revised Statutes ("A.R.S.") §§ 12-1831 to 1846.

21       10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial

TYSON & MENDES, LLP

1  part of the events or omissions giving rise to these claims occurred within this district.

**BACKGROUND**

11.     Talking Rock is the owner and developer of land located in Yavapai County, Arizona, commonly known as the Talking Rock master planned community.

12.     The District is a sanitary district also located in Yavapai County, Arizona.

13.     The Talking Rock master planned community is within the boundaries of the District.

14.     In 2018, a new phase of the Talking Rock master planned community was under development, known as Sterling Ranch.

15.     On March 30, 2018, the District held an open meeting and declared it would not sign capacity assurance approvals for Sterling Ranch, which would have established its intent to provide sanitary sewer service to lots within Sterling Ranch.

16.     The District has been the subject of prior lawsuits alleging the enactment of moratoriums on sewer service without the legal authority to do so.

17.     On November 17, 2010, several developers filed a complaint against the District, captioned Harvard Simon I, LLC, et al. v. Inscription Canyon Ranch Sanitary District, et al., Yavapai County Superior Court Case No. P1300CV201000036 (the "Simon Lawsuit").

18.     In the Simon Lawsuit, plaintiffs allege they sustained monetary damages because the District enacted an illegal sewer service moratorium in 2009.

19.     In the Simon Lawsuit, plaintiffs also allege the District enacted a similar illegal moratorium in 2006, "evidencing a disturbing pattern of behavior."

3

**TYSON & MENDES, LLP**

20.     On January 13, 2011, a property owner filed a complaint against the District, captioned Marvin L. Kaiser, et al. v. Inscription Canyon Ranch Sanitary District, et al., in Yavapai County Superior Court Case No. P1300CV201100061 (the "Kaiser Lawsuit").

21.     In the Kaiser Lawsuit, plaintiffs allege they sustained monetary damages because the District enacted an illegal sewer service moratorium in 2009.

## THE 2018 LAWSUIT

22.     On April 24, 2018, Talking Rock filed a lawsuit against the District and board members Barreira, Summers, and Hilb seeking injunctive relief and a declaratory judgment arising from the District's illegal moratorium on sewer services (the "2018 Lawsuit").

23.     Allied World provided a defense under the Policy pursuant to a reservation of rights.

24.     The trial court held an evidentiary hearing on June 19, 2018.

25.     On November 9, 2018, the trial court issued a ruling declaring the District implemented an illegal moratorium on sewer services and finding Talking Rock to be the prevailing party.

26.     The trial court made the following findings of fact and conclusions of law:

  a.  The Court found "there was no issue as to the capacity of the plant to accommodate Sterling Ranch."

  b.  The Court "specifically found the District has set an artificially low number for capacity and these could be increased without any capacity concerns."

4

TYSON & MENDES, LLP

      c.  The Court found the District engaged in "a pattern and practice of delaying or stopping the issuance of permits, authorizations or approvals necessary for a subdivision."

      d.  The Court found the District's actions were a moratorium without following any of the statutory requirements of A.R.S. § 48-2033.

      e.  The Court found the district had improperly initiated a moratorium.

27.    The trial court later entered judgment against the District, Barreira, Summers, and Hilb awarding Talking Rock $50,000 in attorneys' fees.

28.    The Arizona Court of Appeals affirmed the judgment of the trial court on January 9, 2020.

## THE 2019 LAWSUIT

29.    On March 29, 2019, Talking Rock filed a complaint against the District and Barreira alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing (the "2019 Lawsuit").

30.    In the 2019 Lawsuit, Talking Rock claims because of the moratorium, it was unable to offer Sterling Ranch lots for sale on June 2, 2018 consistent with its sales campaign, which caused significant financial damage to Talking Rock.

31.    Talking Rock also alleges it suffered significant damage to both its reputation and customer goodwill.

5

TYSON & MENDES, LLP

32.     Talking Rock alleges, "the District's wrongful refusal to provide service is simply the most current example of the District's ongoing pattern and practice of enacting moratoriums on sewer service without the legal authority to do so."

33.     On January 30, 2020, Talking Rock filed a first amended complaint ("FAC") against the District in the 2019 Lawsuit.

34.     The FAC removed Barreira as a defendant.

35.     The FAC added claims against the District for defamation, trade libel, interference with business expectancy, abuse of process, and promissory estoppel.

36.     Allied World is providing a defense to the District under the Policy pursuant to a reservation of rights.

### THE POLICY

**(The CGL Coverage Section)**

37.     The Policy provides Commercial General Liability coverage ("CGL Coverage Section") with limits of $1,000,000 for each occurrence, with a $3,000,000 aggregate.

38.     Under Section I, Coverages, the CGL Coverage Section provides:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured

6

**TYSON & MENDES, LLP**

against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A, B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

39.     The CGL Coverage Section provides supplementary payments for Coverages A and B in relevant part:

1.     We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

*        *        *

e.     All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

40.     The CGL Coverage Section provides the following exclusions to Coverage A:

This insurance does not apply to:

*        *        *

c.     Contractual Liability

7

**TYSON & MENDES, LLP**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs or takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*        *        *

e.    Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

TYSON & MENDES, LLP

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\*       \*       \*

m.   Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

This exclusion does not apply to "bodily injury" or "property damage" resulting from reasonable force to protect persons or property.

41.   Under the CGL Coverage Section, the Policy provides Personal Injury and Advertising coverage ("PI Coverage") with limits of $1,000,000 for each occurrence.

42.   The CGL Coverage Section provides in relevant part at Coverage B. Personal And Advertising Injury:

1.   Insuring Agreement

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1)   The amount we will pay for damages is limited as described in SECTION III. – LIMITS OF INSURANCE; and

(2)   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of

9

TYSON & MENDES, LLP

judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b.    This coverage applies to "personal and advertising injury" only if:

(1)    The "personal and advertising injury" is caused by an offense arising out of your operations; and

(2)    The offense is committed in the "coverage territory" during the policy period.

43.    The CGL Coverage Section provides the following exclusions to Coverage B. Personal And Advertising Injury:

This insurance does not apply to:

*    *    *

b.    Breach of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

*    *    *

k.    Knowing Violation of the Rights of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

*    *    *

**TYSON & MENDES, LLP**

n.   Material Published with Knowledge of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

44.   The CGL Coverage Section provides the following definitions:

\*   \*   \*

17.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

18.   "Personal and advertising injury" means injury, including consequential bodily injury", arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;

b.   Malicious prosecution;

c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.   Oral or written publication in any manner of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.   Oral or written publication in any manner of material that violates a person's right of privacy;

f.   The use of another's advertising idea in your "advertisement"; or

g.   Infringing upon another's copyright, trade dress or slogan in your advertisement".

\*   \*   \*

11

**TYSON & MENDES, LLP**

23.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

## THE POLICY

### (The POML Coverage Section)

45.    The Policy provides Public Officials and Management Liability coverage ("POML Coverage Section"), with limits of $1,000,000 each claim.

46.    In Section I—Coverages, the Policy's POML Coverage Section provides under Coverage A. Insuring Agreement – Liability For Monetary Damages:

    1.    We will pay those sums that the insured becomes legally obligated to pay as "damages" arising out of a "claim" for:

        a.    a "wrongful act," or

        b.    an "employment practices" offense, or

        c.    an offense in the "administration" of your "employee benefit plans,"

    to which this insurance applies.

    We will have the right and duty to defend any "claim" seeking those "damages." However, we will have no duty to defend the insured against any "claim" seeking "damages" for a "wrongful act" or an "employment practices" offense or an offense in the "administration" of your "employee benefit plans" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act,"

TYSON & MENDES, LLP

"employment practices" offense or an offense in the "administration" of your "employee benefit plans," and settle any "claim" that may result.

However:

The amount we will pay for "damages" is limited as described in SECTION IV. – LIMITS OF INSURANCE; and

Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of "damages" or "defense expenses" under Coverages A. and B.

No other obligation or liability to pay sums or perform acts or services is covered under this insurance unless explicitly provided for below under Coverage A. Supplementary Payments.

2.      This insurance applies to "claims" for "wrongful acts" or offenses only if:

        a.      The "wrongful act" or offense takes place in the "coverage territory," and or after the retroactive date shown in the declarations and before the end of the policy period; and

        b.      A "claim" is first made against any insured in accordance with paragraph 3.c. below, during the policy period or any Extended Reporting Period we provide according to SECTION VII. – EXTENDED REPORTING PERIODS

3.      A "claim" will be deemed to have been made at the earliest of the following times:

a.      When notice of such "claim" is first received by any insured or by us, whichever comes first; or

b.      When you become aware of a "wrongful act" or an offense which may subsequently give rise to a "claim" being made against any insured, and you give written notice to us, as described in SECTION VI. – CONDITIONS, of such circumstances as soon as practicable but no later than:

**TYSON & MENDES, LLP**

        (1)     The end of the policy period; or

        (2)     The end of any applicable Extended Reporting Period.

4.     All related "claims" based on or arising out of: the same, related or continuous "wrongful acts" or offenses; or "wrongful acts" or offenses which arise from a common nucleus of facts; or the same act or interrelated acts of one or more insureds, shall be considered a single claim, which is first made when the earliest of such "claims" was made. All "damages" from all related "claims," regardless of the number of:

        a.     Insureds;

        b.     Plaintiffs; or

        c.     "Claims" made;

shall be subject to one "Each Claim" Limit of Insurance, and one Deductible.

47.     In Section I—Coverages, the Policy's POML Coverage Section provides under Coverage A. Supplementary Payments:

We will pay, with respect to any "claim" we investigate, settle, or defend:

1.     All expenses we incur.

2.     The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

3.     All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim," including actual loss of earnings up to $500 a day because of time off from work.

4.     All court costs taxed against the insured in the "claim." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**TYSON & MENDES, LLP**

5.    Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6.    All interest earned on that part of any judgment within our limit of insurance after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the limits of insurance.

48.    In Section I—Coverages, the Policy's POML Coverage Section provides under Coverage B. Insuring Agreement - Defense Expenses For Injunctive Relief:

1.    We will pay those reasonable sums the insured incurs as "defense expenses" to defend against an action for "injunctive relief" because of a "wrongful act," an "employment practices" offense, or an offense in the "administration" of your "employee benefit plans" to which this insurance applies.

However:

a.    The amount we will pay for "defense expenses" is limited as described in SECTION IV. – LIMITS OF INSURANCE; and

b.    We have no obligation to arrange for or provide the defense for any action for "injunctive relief."

No other obligation or liability to pay sums or perform acts or services is covered.

49.    The limits for defense expenses for injunctive relief is $5,000.

50.    Under Section II—Exclusions, the Policy's POML Coverage Section provides:

This insurance does not apply under either Coverage A or Coverage B to:

1.    Other Applicable Coverage

15

**TYSON & MENDES, LLP**

Any "wrongful act" or offense which is insured by any other policy or policies except:

a.      A policy purchased to apply in excess of this Coverage Form; or

b.      That portion of monetary "damages" otherwise covered by this Coverage Form which exceeds the limits of liability of such other policy or policies, subject to the Other Insurance Condition in SECTION VI. – CONDITIONS.

2.      Known Prior Acts

"Damages," "defense expenses," costs or loss based upon, attributed to, arising out of, in consequence of, or in any way related to any "wrongful act" or offense which takes place prior to the inception date of this Coverage Form, if the insured knew or reasonably should have foreseen that such offense or "wrongful act" would give rise to a "claim."

3.      Prior Litigation

"Damages," "defense expenses," costs or loss based upon, attributed to, arising out of, in consequence of, or in any way related to litigation or administrative or regulatory proceedings otherwise covered by this Coverage Form if such litigation or administrative or regulatory proceedings were initiated prior to or were pending on the inception date of this Coverage Form.

*       *       *

5.      Attorney's Fees and Court Costs

Any award of court costs or attorney's fees which arises out of an action for "injunctive relief."

6.      Bodily Injury, Property Damage or Personal and Advertising Injury

"Damages," "defense expenses," costs or loss, based upon, attributed to, arising out of, in consequence of, or in any way related to "bodily

16

TYSON & MENDES, LLP

injury", "property damage," or "personal and advertising injury," other than mental anguish or mental injury resulting from a covered "employment practices" offense.

\*     \*     \*

10.    Sums Due Under Contract

Any amount actually or allegedly due under the terms of any contract for the purchase of goods or services or any payment or performance contract.

11.    Contractual Liability

"Damages," "defense expenses," costs or loss based upon, attributed to, arising out of, in consequence of, or in any way related to any contract or agreement to which the insured is a party or a third-party beneficiary, including, but not limited to, any representations made in anticipation of a contract or any interference with the performance of a contract.

12.    Criminal Acts

"Damages," "defense expenses," costs or loss arising out of or contributed to by any fraudulent, dishonest, criminal or malicious act of the insured (except for "sexual abuse" which is excluded in the Sexual Abuse exclusion below), or the willful violation of any statute, ordinance or regulation committed by or with the knowledge of the insured. However, we will defend the insured for covered civil action subject to the other terms of this Coverage Form until either a judgment or final adjudication establishes such an act, or the insured confirms such act.

\*     \*     \*

19.    Violation of Law

"Damages," "defense expenses," costs, or loss arising from an insured's willful violation of any federal, state, or local law, rule, or regulation.

**TYSON & MENDES, LLP**

51.     Under Section VIII—Definitions of the Policy's POML Coverage Section, the following relevant terms are defined:

*     *     *

3.     "Claim" means:

a.     written notice, from any party, that it is their intention to hold the insured responsible for "damages" arising out of a "wrongful act" or offense by the insured;

b.     a civil proceeding in which "damages" arising out of an offense or "wrongful act" to which this insurance applies are alleged;

c.     an arbitration proceeding in which "damages" arising out of an offense or "wrongful act" to which this insurance applies are claimed and to which the insured must submit or does submit with our consent;

d.     any other civil alternative dispute resolution proceeding in which "damages" arising out of an offense or "wrongful act" to which this insurance applies are claimed and to which the insured submits with our consent; or

e.     a formal proceeding or investigation with the Equal Employment Opportunity Commission, or with an equivalent state or local agency.

A "claim" does not mean any ethical conduct review or enforcement action, or disciplinary review or enforcement action.

*     *     *

5.     "Damages"" means monetary damages.

*     *     *

25.     "Wrongful act" means any actual or alleged error, act, omission, neglect, misfeasance, nonfeasance, or breach of duty, including

18

**TYSON & MENDES, LLP**

violation of any civil rights law, by any insured in the discharge of their duties for the Named Insured, individually or collectively, that results directly but unexpectedly and unintentionally in "damages" to others.

## <u>COUNT I</u>

### (Coverage for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing)

52.    Allied Word incorporates the allegations set forth in paragraphs 1-51 as though fully set forth herein.

53.    Count One of the FAC in the 2019 Lawsuit alleges the District breached the terms of a 2012 agreement with Talking Rock and other developers by enacting an unlawful moratorium.

54.    Count Two of the FAC in the 2019 Lawsuit alleges the District breached the covenant of good faith and fair dealing implied in every contract by enacting an unlawful moratorium.

55.    Talking Rock alleges it sustained damages as a result of the alleged breaches of contract and the implied covenant of good faith and fair dealing, including diminution of value and lost profits.

56.    Talking Rock seeks an award of attorneys' fees and other expenses pursuant to various Arizona statutes.

57.    The CGL Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because there was no "occurrence" as defined in the Policy.

19

**TYSON & MENDES, LLP**

58.    The CGL Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Talking Rock did not sustain "property damage" as defined in the Policy; and

59.    The CGL Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Economic loss such as diminution of value and lost profits are not "property damage" recoverable under from loss of use is not covered under CGL policies.

60.    The CGL Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Exclusion "c" for "Contractual Liability" applies;

61.    The CGL Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Exclusion "e" for "Damage to Impaired Property or Property Not Physically Injured" applies;

62.    The CGL Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Exclusion "m" for "Expected or Intended Injury" applies.

63.    The CGL Coverage Section does not provide coverage for attorneys' fees or attorneys' expenses taxed against the District.

64.    The POML Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because the claims do not fall within the terms of the insuring agreement.

**TYSON & MENDES, LLP**

65.     The POML Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because the alleged conduct does not fall within the definition of a "wrongful act."

66.     The POML Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Exclusion "1" for "Other Applicable Coverage" applies.

67.     The POML Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because "Exclusion "2" for "Known Prior Acts" applies.

68.     The POML Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Exclusion "3" for "Prior Litigation" applies.

69.     The POML Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Exclusion "10" for "Sums Due Under Contract" applies.

70.     The POML Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Exclusion "11" for "Contractual Liability" applies.

71.     The POML Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Exclusion "12" for "Criminal Acts" applies.

**TYSON & MENDES, LLP**

72.     The POML Coverage Section does not provide coverage for the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Exclusion "19" for "Violation of Law" applies.

73.     The POML Coverage Section does not provide coverage for attorneys' fees or attorneys' expenses taxed against the District.

74.     Allied World does not have a duty to defend, indemnify, or settle Talking Rock's breach of contract and breach of the implied covenant of good faith and fair dealing claims against the District.

75.     Because this action arises out of contract, Allied World is entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

### COUNT II

### (Coverage for Defamation and Trade Libel)

76.     Allied Word incorporates the allegations set forth in paragraphs 1-75 as though fully set forth herein.

77.     In Counts Three and Four of the FAC in the 2019 Lawsuit, Talking Rock alleges the District made a number of false statements that defamed Talking Rock.

78.     Talking Rock alleges the defamatory statements caused pecuniary loss to Talking Rock.

79.     Talking Rock alleges the defamatory statements caused a loss of use of its property.

22

**TYSON & MENDES, LLP**

80.     Talking Rock alleges it sustained consequential damages as a result of the defamatory statements.

81.     The CGL Coverage Section for PI Coverage does not provide coverage for the defamation and trade libel claims because exclusion "b" for "Breach of Contract" applies.

82.     The CGL Coverage Section for PI Coverage does not provide coverage for the defamation and trade libel claims because exclusion "k" for "Knowing Violation of the Rights of Another" applies.

83.     The CGL Coverage Section for PI Coverage does not provide coverage for the defamation and trade libel claims because exclusion "n" for "Material Published with Knowledge of Falsity" applies.

84.     The POML Coverage Section does not provide coverage for the defamation and trade libel claims because exclusion "6" for "Bodily Injury, Property Damage or Personal and Advertising Injury" applies.

85.     The POML Coverage Section does not provide coverage for attorneys' fees or attorneys' expenses taxed against the District.

86.     Allied World does not have a duty to defend, indemnify, or settle Talking Rock's defamation and trade libel claims against the District.

87.     Because this action arises out of contract, Allied World is entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

TYSON & MENDES, LLP

## COUNT III

### (Coverage for Interference with Business Expectancy)

88.     Allied Word incorporates the allegations set forth in paragraphs 1-87 as though fully set forth herein.

89.     In Count Five of the FAC in the in the 2019 Lawsuit, Talking Rock alleges it had a business expectancy that it would obtain over $5 million in sales during the sales launch in the summer of 2018, and the District intentionally interfered with that business expectancy.

90.     Talking Rock alleges the District's conduct was improper because, in part, it was disparaging and defamatory.

91.     Talking Rock claims damage to reputation, diminution of value, and loss of use.

92.     Talking Rock claims it sustained consequential damages, including attorneys' fees.

93.     The CGL Coverage Section for PI Coverage does not provide coverage for the intentional interference with contract claim because exclusion "b" for "Breach of Contract" applies.

94.     The CGL Coverage Section for PI Coverage does not provide coverage for the intentional interference with contract claim because exclusion "k" for "Knowing Violation of the Rights of Another" applies.

95.     The CGL Coverage Section for PI Coverage does not provide coverage for the intentional interference with contract claim because exclusion "n" for "Material Published with Knowledge of Falsity" applies.

24

TYSON & MENDES, LLP

96.     The CGL Coverage Section does not provide coverage for attorneys' fees or attorneys' expenses taxed against the District.

97.     The POML Coverage Section does not provide coverage for the intentional interference with contract claim because the claim does not fall within the terms of the insuring agreement.

98.     The POML Coverage Section does not provide coverage for the intentional interference with contract claim because the alleged conduct does not fall within the definition of a "wrongful act."

99.     The POML Coverage Section does not provide coverage for the intentional interference with contract claim because Exclusion "1" for "Other Applicable Coverage" applies.

100.    The POML Coverage Section does not provide coverage for the intentional interference with contract claim because "Exclusion "2" for "Known Prior Acts" applies.

101.    The POML Coverage Section does not provide coverage for the intentional interference with contract claim because Exclusion "3" for "Prior Litigation" applies.

102.    The POML Coverage Section does not provide coverage for the intentional interference with contract claim because Exclusion "5" for "Attorney's Fees and Court Costs" applies.

103.    The POML Coverage Section does not provide coverage for the intentional interference with contract claim because Exclusion "11" for "Contractual Liability" applies.

TYSON & MENDES, LLP

104.  The POML Coverage Section does not provide coverage for the intentional interference with contract claim because Exclusion "12" for "Criminal Acts" applies.

105.  The POML Coverage Section does not provide coverage for the intentional interference with contract claim because Exclusion "19" for "Violation of Law" applies.

106.  The POML Coverage Section does not provide coverage for attorneys' fees or attorneys' expenses taxed against the District.

107.  Allied World does not have a duty to defend, indemnify, or settle Talking Rock's intentional interference with contract claim against the District.

108.  Because this action arises out of contract, Allied World is entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

**COUNT IV**

**(Coverage for Abuse of Process)**

109.  Allied Word incorporates the allegations set forth in paragraphs 1-108 as though fully set forth herein.

110.  In Count Six of the FAC in the in the 2019 Lawsuit, Talking Rock alleges the District abused process by forcing Talking Rock to litigate the capacity issue at an evidentiary hearing despite having no evidence to support its position on capacity.

111.  Talking Rock claims as damages the attorneys' fees it expended due to the demand for hearing.

112.  There is no coverage for the abuse of process claim under the CGL Coverage Section for PI Coverage, because abuse of process does not fall under the insuring agreement.

**TYSON & MENDES, LLP**

113.   The CGL Coverage Section for PI Coverage does not provide coverage for the abuse of process claim because exclusion "b" for "Breach of Contract" applies.

114.   The CGL Coverage Section for PI Coverage does not provide coverage for the abuse of process claim because exclusion "k" for "Knowing Violation of the Rights of Another" applies.

115.   The CGL Coverage Section for PI Coverage does not provide coverage for the abuse of process claim because exclusion "n" for "Material Published with Knowledge of Falsity" applies.

116.   The CGL Coverage Section for PI Coverage does not provide coverage for attorneys' fees or attorneys' expenses taxed against the District.

117.   The POML Coverage Section does not provide coverage for the abuse of process claim because the claim does not fall within the terms of the insuring agreement.

118.   The POML Coverage Section does not provide coverage for the abuse of process claim because the alleged conduct does not fall within the definition of a "wrongful act."

119.   The POML Coverage Section does not provide coverage for the abuse of process claim because Exclusion "1" for "Other Applicable Coverage" applies.

120.   The POML Coverage Section does not provide coverage for the abuse of process claim because "Exclusion "2" for "Known Prior Acts" applies.

121.   The POML Coverage Section does not provide coverage for abuse of process claim because Exclusion "3" for "Prior Litigation" applies.

27

**TYSON & MENDES, LLP**

122.    The POML Coverage Section does not provide coverage for abuse of process claim because Exclusion "5" for "Attorney's Fees and Court Costs" applies.

123.    The POML Coverage Section does not provide coverage for abuse of process claim because Exclusion "11" for "Contractual Liability" applies.

124.    The POML Coverage Section does not provide coverage for abuse of process because Exclusion "12" for "Criminal Acts" applies.

125.    The POML Coverage Section does not provide coverage for abuse of process claim because Exclusion "19" for "Violation of Law" applies.

126.    The POML Coverage Section does not provide coverage for attorneys' fees or attorneys' expenses taxed against the District.

127.    Allied World does not have a duty to defend, indemnify, or settle Talking Rock's abuse of process claim against the District.

128.    Because this action arises out of contract, Allied World is entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## COUNT V

### (Coverage for Promissory Estoppel)

129.    Allied Word incorporates the allegations set forth in paragraphs 1-128 as though fully set forth herein.

130.    In Count Seven of the FAC in the in the 2019 Lawsuit, Talking Rock alleges in March of 2018 prior to the March 30, 2018 board meeting, the District promised Talking Rock

28

**TYSON & MENDES, LLP**

that it would grant the approvals necessary for offering the Sterling Ranch lots for public sale as scheduled on the heavily marketed June 2 date and Talking Rock relied upon those promises.

131.   Talking Rock claims it sustained damages, including attorneys' fees.

132.   The CGL Coverage Section for PI Coverage does not provide coverage for the estoppel claim because exclusion "b" for "Breach of Contract" applies.

133.   The CGL Coverage Section for PI Coverage does not provide coverage for the estoppel claim because exclusion "k" for "Knowing Violation of the Rights of Another" applies.

134.   The CGL Coverage Section for PI Coverage does not provide coverage for the estoppel claim because exclusion "n" for "Material Published with Knowledge of Falsity" applies.

135.   The CGL Coverage Section for PI Coverage does not provide coverage for attorneys' fees or attorneys' expenses taxed against the District.

136.   The POML Coverage Section does not provide coverage for the estoppel claim because the claim does not fall within the terms of the insuring agreement.

137.   The POML Coverage Section does not provide coverage for the intentional interference with contract claim because the alleged conduct does not fall within the definition of a "wrongful act."

138.   The POML Coverage Section does not provide coverage for the estoppel claim because Exclusion "1" for "Other Applicable Coverage" applies.

139.   The POML Coverage Section does not provide coverage for the estoppel claim because "Exclusion "2" for "Known Prior Acts" applies.

TYSON & MENDES, LLP

140.   The POML Coverage Section does not provide coverage for the estoppel claim because Exclusion "3" for "Prior Litigation" applies.

141.   The POML Coverage Section does not provide coverage for the estoppel claim because Exclusion "5" for "Attorney's Fees and Court Costs" applies.

142.   The POML Coverage Section does not provide coverage for the estoppel claim because Exclusion "11" for "Contractual Liability" applies.

143.   The POML Coverage Section does not provide coverage for the estoppel claim because Exclusion "12" for "Criminal Acts" applies.

144.   The POML Coverage Section does not provide coverage for the estoppel claim because Exclusion "19" for "Violation of Law" applies.

145.   The POML Coverage Section does not provide coverage for attorneys' fees or attorneys' expenses taxed against the District.

146.   Allied World does not have a duty to defend, indemnify, or settle Talking Rock's estoppel claim against the District.

147.   Because this action arises out of contract, Allied World is entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## COUNT VI

### (Coverage for Attorneys' Fees Judgment)

148.   Allied Word incorporates the allegations set forth in paragraphs 1-147 as though fully set forth herein.

**TYSON & MENDES, LLP**

149.   The POML Coverage Section does not provide coverage for the judgment for attorneys' fees entered against the District, Barreira, Summers, and Hilb in the 2016 Lawsuit.

150.   Because this action arises out of contract, Allied World is entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

WHEREFORE, Allied World requests the following relief:

A.   A declaration the Policy does not provide coverage to the District for all claims alleged in the 2019 Lawsuit;

B.   A declaration Allied World does not have a duty to defend the District against the claims alleged in the 2019 Lawsuit;

C.   A declaration Allied World does not have a duty to indemnify the District for the claims alleged in the 2019 Lawsuit;

D.   A declaration Allied World does not have a duty to indemnify the District, Barreira, Summers, and/or Hilb for the judgment for attorneys' fees entered in the 2018 Lawsuit;

E.   An award of attorneys' fees pursuant to A.R.S. § 12-341.01;

F.   An award of taxable costs pursuant to A.R.S. § 12-341; and

G.   Such other and further relief as the Court deems just and proper.

DATED this 16th day of April, 2020.

TYSON & MENDES, LLP

By: */s/ Lynn M. Allen*
Lynn M. Allen
*Attorneys for Plaintiff*

31